United States District Court
Southern District of Texas
**ENTERED**
March 30, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DEAN DABBASI, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:20-CV-04344 |
| | § | |
| MOTIVA ENTERPRISES, LLC, | § | |
| | § | |
| Defendant. | § | |

# ORDER

Before the Court are Defendant's Second Motion for Summary Judgment (Doc. #46), Plaintiff's Response (Doc. #48), and Defendant's Reply (Doc. #49). Having reviewed the parties' arguments and applicable legal authority, the Court grants Defendant's Motion.

## I. Background

This case arises out of Plaintiff Dean Dabbasi's termination from his former employer, Defendant Motiva Enterprises, LLC ("Defendant" or "Motiva"). Plaintiff alleges he was discriminated against because of his age and, alternatively, his disability.

### a. Factual Background

Dean Dabbasi ("Plaintiff" or "Dabbasi") started working for Motiva on June 16, 2014 as a gasoline coordinator in the Economics and Scheduling ("E&S") Department at its Port Arthur refinery (the "Refinery"). Doc. #46, Ex. 1 at 6. Less than one year into his employment, Plaintiff was placed on a performance improvement plan ("PIP"). Doc. #46, Ex. 2 at 2–5. The PIP was later discontinued, but Plaintiff received subpar performance ratings on his next three annual reviews. Doc. #46, Ex. 3 at 2.

In October 2018, Jeremy Burnham ("Burnham") became Production Planning Manager and Dabbasi's direct supervisor. Doc. #46, Ex. 4 ¶ 3. That same month, Burnham began collecting feedback regarding the performance of E&S Department team members. Doc. #46, Ex. 6 at 2–3. Feedback on Dabbasi was that he was "difficult to work with," "unreasonable," and "[did] not always communicate important information." *Id.* at 5. In November 2018, Refinery management and human resources ("HR") began to evaluate Refinery personnel for purposes of succession planning, and to focus on early-career, high-potential employees who would be prioritized for coordinator positions so that they could gain valuable experience regarding Motiva's refining operations. Doc. #46, Ex. 7 at ¶ 3.

On November 10, 2018, Burnham completed his "Role Transitions" summary, which described two categories of employees in the E&S Department: "pillars" and "beanstalks." Doc. #46, Ex. 8 at 2, 5. "Pillars" were long-term E&S Department employees who would likely spend their careers in the department and maintain consistency of operations, while "beanstalks" were short-term, early-career, high performers who would transition to other opportunities in the company. *Id.* Burnham also identified employees, such as Dabbasi, who did not fit into either category. *Id.* at 10; *see also* Ex. 4 ¶ 6. Burnham noted that Dabbasi was a "poor fit" for the gasoline coordinator position and envisioned him transitioning within the E&S department to a strategy advisor position. Doc. #46, Ex. 4 ¶ 6.

In December 2018, on a scale from 1 to 5 (1 being the worst, 5 being the best), Burnham rated Dabbasi a "3" on his performance review. Doc. #46, Ex. 4 ¶ 7. Burnham wanted to rate Dabbasi a "2," but did not to avoid discouraging him. *Id.* Instead, Burnham wanted to help Dabbasi improve. *Id.* On February 1, 2019, Burnham transitioned Dabbasi to the heavy oil coordinator position because, in his view, Dabbasi had technical knowledge for the position and

2

was already performing many of those duties. Doc. #46, Ex 1 at 9, Ex. 4 ¶ 8. Burnham also started meeting with Dabbasi to guide him in transitioning his gasoline coordinator duties to Candace Vaughn ("Vaughn"). Doc. #46, Ex. 4 ¶ 8. On February 13, 2019, Burnham provided Patrick Moore ("Moore"), the E&S Department Manager, his initial thoughts on personnel movement within the department. Doc. #46, Ex. 10. Burnham again noted that Dabbasi might be placed in an E&S advisor position, consistent with his November 2018 "Role Transitions" summary. *Id.* Burnham then received three different complaints about Dabbasi between March 25 and April 12, 2019. *See* Doc. #46, Ex. 11, Ex. 12, Ex. 13, Ex. 14, Ex. 15.

On April 12, 2019, Burnham emailed Moore detailing the problems with Dabbasi's performance and noting that his performance ratings for years 2015–2017 were all "below expectations." Doc. #46, Ex. 16 at 4. On April 16, 2019, Burnham met one-on-one with Dabbasi to explain his performance expectations for the next couple of months. *Id.* at 2. On April 22, 2019, Burnham met with HR representative Jacob Nishida ("Nishida") and decided that "it was not yet appropriate to put [Dabbasi] on a PIP." *Id.* Instead, "[Burnham would] monitor the situation" and provide "prompt feedback," noting that Dabbasi's upcoming mid-year review provided a natural time to "re-assess the situation." *Id.*

The E&S advisor position that Burnham envisioned Dabbasi transitioning into did not materialize because of the vice president and general manager's decision to avoid adding personnel in the E&S Department. Doc. #46, Ex. 4 ¶ 11, Ex. 7 ¶ 4. Based on this decision, the E&S advisor position was not posted, applications were not sought, individuals were not interviewed, nor was the position ever filled. Doc. #46, Ex. 4 ¶ 11, Ex. 7 ¶ 4. Meanwhile, Vaughn experienced difficulties getting Dabbasi to effectively transition his gasoline coordinator duties to her. She told Dabbasi that transition meetings would "NOT be used to [d]rop of[f] random binders/documentation

without discussion, [t]alk[] at me without clear walk through/demonstration, or [d]ebate perceived level of difficulty/time to complete transition items." Doc. #46, Ex. 21, at 2. On May 14, 2019, Vaughn requested that Dabbasi be removed from their shared office, noting that she had "asked everyone in the department over the last 2+ years to switch offices with [her] and no one [would] agree to share an office with [him]." Doc. #46, Ex. 22, at 2. In light of Vaughn's complaint and Dabbasi's failure to transition his duties, Burnham met with Nishida and decided to put Dabbasi on a PIP. Doc. #46, Ex. 4 ¶ 14, Ex. 26, Ex. 27, Ex. 28.

On July 18, 2019, Burnham, Nishida, and another HR rep, Peter Garrard ("Garrard"), met with Dabbasi at the Refinery to discuss implementing the PIP. Doc. #46, Ex. 1 at 27. When Dabbasi was told that they were meeting about a PIP, he immediately stood up and went out into the hallway because he felt like he "was about to faint." *Id.* at 28–29. Dabbasi re-entered the room, told the others that they would have to reconvene later, walked downstairs to take his own blood pressure, and then drove to the doctor's office. *Id.* at 33–38. As a result of what was later described as a "cardiac episode," Defendant provided Dabbasi with leave under the Family and Medical Leave Act ("FMLA") from July 18, 2019 to August 12, 2019. *Id.* at 41–45, 95. Dabbasi returned to work on August 12, 2019, without any medical or physical restrictions. *Id.* at 45. Upon his return, a second meeting to initiate his PIP took place on August 14, 2019, with Burnham, Nishida, and Garrard in the same office as before and lasted about an hour. Doc. #46, Ex. 1 at 46–47. At that meeting, Dabbasi demonstrated disrespectful, unprofessional behavior and failed to take accountability for his subpar performance or commitment to improve. Doc. #46, Ex. 1 at 47–56, Ex. 34 at 4–6. Nevertheless, Dabbasi ultimately signed the PIP. Doc. #46, Ex. 35.

Burnham told Moore what happened at Dabbasi's PIP meeting; Moore then confirmed Burnham's account by speaking with Nishida and Garrard. Doc. #46, Ex 4 ¶ 17, Ex. 7 ¶¶ 6–7.

4

Moore then decided, with administrative approval, to terminate Dabbasi. Doc. #46, Ex. 7 ¶ 7. On August 15, 2019, Moore and Nishida met with Dabbasi to terminate his employment because of his record of unsatisfactory performance, poor attitude (including during the PIP meeting), and refusal to commit to improving his performance. Doc. #46, Ex. 1 at 57–64, Ex. 7 ¶ 7, Ex. 34 at 7–9. On February 10, 2020, Dabbasi filed his charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging for the first time that Moore "talked about bringing in younger people and rotating them through the group." Doc. #46, Ex. 36 at 3.

b. **Procedural Background**

Plaintiff filed this lawsuit against Defendant on December 23, 2020, alleging age discrimination under the Age Discrimination in Employment Act ("ADEA") and Texas Commission on Human Rights Act ("TCHRA") based on the following actions: (1) his transition to a heavy oil coordinator position; (2) not being placed into an E&S Advisor position; (3) being placed on a PIP; and (4) the termination of his employment. Doc. #1. Plaintiff filed an alternative disability discrimination claim under the Americans with Disabilities Act ("ADA") based on the termination of his employment. *Id.* On February 11, 2022, Defendant filed its first Motion for Summary Judgment and Plaintiff filed his Motion to Compel Response to Interrogatory No. 12. Doc. #24; Doc. #26. On May 26, 2022, the Court held a hearing for Plaintiff's Motion to Compel (Doc. #26), at which the Court ordered Defendant to produce the name, position, and birth month of employees older than 45 years of age terminated from the E&S Department in 2018 and 2019, and the reason for their termination or separation from the Department. In light of this ordered production, the Court denied Defendant's first Motion for Summary Judgment without prejudice to refile once discovery was completed. Doc. #39. On September 13, 2022, Defendant notified the Court that it had produced the ordered discovery. Doc. #41. On October 14, 2022, Defendant

filed its second Motion for Summary Judgment, seeking summary judgment on all of Plaintiff's claims. Doc. #46.

## II. Legal Standard

Summary judgment is proper where there is no genuine dispute of material fact and the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(a). "A genuine dispute as to a material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Rogers v. Bromac Title Services, L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014) (internal citations omitted). "The moving party bears the initial burden on demonstrating the absence of a genuine issue of material fact. If the moving party meets its burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine issue for trial." *Carnes Funeral Home, Inc. v. Allstate Ins. Co.*, 509 F. Supp. 3d 908, 915 (S.D. Tex. 2020) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) and FED R. CIV. P. 56(e)). Courts must construe "all facts and inferences in the light most favorable to the nonmoving party. But summary judgment may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *Rogers*, 755 F.3d at 350 (internal citations omitted).

## III. Analysis

Plaintiff's ADEA and TCHRA claims are based on four different actions: (1) his transition to the heavy oil coordinator position; (2) not being placed into an E&S advisor position; (3) being placed on a PIP; and (4) the termination of his employment. Doc. #1. His ADA claim is solely based on his termination. *Id.* The Court will evaluate each claim in turn.

### a. Transition to Heavy Oil Coordinator

Defendant moves for summary judgment on Plaintiff's ADEA and TCHRA claims arising out of his transition to the heavy oil coordinator position, arguing that they are time-barred. Doc.

#46 at 14–15. Under the ADEA, a plaintiff must file a charge of discrimination within 300 days from the date of the alleged discriminatory act. *See Pope v. MCI Telecomms. Corp.*, 937 F.2d 258, 263–64 (5th Cir. 1991). Under the TCHRA, a plaintiff must file a charge of discrimination within 180 days from the date of the alleged discriminatory act, and exhaustion of administrative remedies is a jurisdictional prerequisite. *See* TEX. LABOR CODE § 21.202(a); *Williams v. Merck & Co., Inc.*, 381 Fed. App'x 438, 444 (5th Cir. 2010).

Here, Plaintiff assumed the heavy oil coordinator position on February 1, 2019. Doc. #46, Ex 1 at 9. Thus, he had until July 31, 2019 (180 days from February 1), to file his TCHRA charge and until November 28, 2019 (300 days from February 1), to file his ADEA charge. Plaintiff filed his charge of discrimination on February 10, 2020 ("Charge Date"), 375 days after he assumed the heavy oil coordinator position and well beyond the time limitations of both the ADEA and TCHRA. Doc. #46, Ex. 36 at 3. ADEA and TCHRA claims that are time barred deprive the Court of jurisdiction. *Williams*, 381 Fed. App'x at 444; *Pope*, 937 F.2d at 263–64. Therefore, Plaintiff's claims regarding his role transition are time barred, and Defendant's Motion for Summary Judgment is granted with respect to the associated claims.

    b.    **Alleged Denial of E&S Strategy Advisor Position and the PIP**

        1.    **Denial of E&S Position - TCHRA**

Defendant moves for summary judgment on Plaintiff's TCHRA and ADEA claims arising out the alleged denial of the E&S strategy advisor position, arguing first that the TCHRA claim is time barred. Doc. #46 at 15–18. Plaintiff claims that Defendant denied him the E&S advisor position "toward the middle" of May 2019. Doc. #46, Ex. 1 at 88–90. Under TCHRA, Plaintiff's deadline to file his charge of discrimination based on this alleged denial was November 26, 2019 (180 days from May 30). As noted previously, Plaintiff filed his charge of discrimination on

7

February 10, 2020. Doc. #46, Ex. 36 at 3. Plaintiff's TCHRA claim arising out of being denied the E&S advisor position is therefore time barred and Defendant's Motion for Summary Judgment is granted with respect to that claim.

### 2. Denial of E&S Position - ADEA

Defendant also argues for summary judgment on Plaintiff's ADEA claim on the basis that Plaintiff cannot prove a *prima facie* case of age discrimination. Doc. #46 at 15–18. The ADEA and TCHRA prohibit discrimination on the basis of age. *See* 29 U.S.C. § 623(a)(1); TEX. LABOR CODE § 21.051. The elements of age discrimination under the ADEA also apply to the TCHRA. *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 439 (5th Cir. 2012). To establish an ADEA claim, "[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009).

Where, as here, the plaintiff relies on circumstantial evidence for his discrimination claim,[1] courts apply the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, (1973); *Reed*, 701 F.3d at 439. Under the *McDonnell Douglas* framework, "[a] plaintiff relying on circumstantial evidence must put forth a prima facie case, at which point the burden shifts to the employer to provide a legitimate, non-discriminatory reason for the employment decision." *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010). To put forth a *prima facie* case, Plaintiff must prove that he: (1) is a member of a protected group (that is, 40 years of age or older); (2) was qualified for the position at issue; (3) suffered some adverse employment action by the employer; and (4) was either (a) replaced by someone significantly younger or (b) treated less favorably than other similarly situated employees outside

---

[1] "The connection between the events is a matter of circumstantial evidence." Doc. #48 at 15.

8

the protected group. *Tex. Tech Univ. Health Scis. Ctr.-El Paso v. Flores*, 612 S.W.3d 299, 305 (Tex. 2020); *Welsh v. Fort Bend Indep. Sch. Dist.*, 941 F.3d 818, 823 (5th Cir. 2019).

Defendant argues that Plaintiff cannot put forth a *prima facie* case for age discrimination because the E&S advisor position never materialized and failure to be transitioned into an unavailable position is not an adverse action as a matter of law. Doc. #46 at 17. Defendant established that the E&S strategy advisor position never materialized because of a managerial decision to avoid adding additional personnel in the E&S Department. Doc. #46, Ex. 4 ¶ 11, Ex. 7 ¶ 4. Plaintiff confirmed this in his deposition, explaining that "there was no role to apply to." Doc. #46, Ex. 1 at 84. Under Fifth Circuit law, "[a]n employer does not discriminate or retaliate illegally if it has no job opening." *Adams v. Groesbeck Indep. Sch. Dist.*, 475 F.3d 688, 692 (5th Cir. 2007). Therefore, Plaintiff failed to meet his burden of putting forth a *prime facie* case and his ADEA claim based on failure to transition to the E&S strategy advisor position fails as a matter of law. Defendant's Motion for Summary Judgment is granted with respect to that claim.

### 3. Performance Improvement Plan – ADEA and TCHRA

Defendant next moves for summary judgment on Plaintiff's ADEA and TCHRA claims arising out of being assigned a PIP, arguing that a performance improvement plan is not an adverse employment action. Doc. #46 at 18–19. "An employer's decision to place an employee on a performance improvement plan is not an adverse employment action." *See Welsh*, 941 F.3d at 824. Therefore, Plaintiff has not met his burden to put forth a *prime facie* case of age discrimination. Accordingly, Plaintiff's ADEA and TCHRA claims based on the implementation of his PIP fail as a matter of law, and Defendant's Motion for Summary Judgment is granted with respect to those claims.

9

    c.    **Plaintiff's Termination**

    1.    **Termination – ADEA and TCHRA**

Lastly among Plaintiff's age discrimination claims, Defendant moves for summary judgment on Plaintiff's ADEA and TCHRA claims arising out of his termination, arguing that Plaintiff cannot establish a *prima facie* case of age discrimination. Doc. #46 at 20. Specifically, Defendant argues that Plaintiff puts forth no evidence of replacement by a younger employee or less favorable treatment than younger employees. *See Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010) (the fourth element of a *prima facie* case is that the plaintiff was either "(i) replaced by someone outside the protected class, (ii) replaced by someone younger, or (iii) otherwise discharged because of his age.").

Plaintiff contends that he was replaced by Candance Vaughn, who is twenty years younger than him, in the gasoline coordinator position. Doc. #48 at 12–13. But Plaintiff's claim is based on his termination from the heavy oil coordinator position; Plaintiff was not terminated from his gasoline coordinator position. Moreover, Plaintiff's transition from gasoline coordinator to heavy oil coordinator is time barred and cannot be considered for purposes of his ADEA or TCHRA claims. *See supra* pp. 6–7. The only evidence that Plaintiff provides of age discrimination is his deposition testimony expressing his belief that he was terminated because of his age. Doc. #46, Ex. 1 at 75–83. The Courts finds this conclusory and insufficient to meet Plaintiff's burden. Accordingly, Plaintiff has failed to establish a *prime facie* case of age discrimination based on his termination. Defendant's Motion for Summary Judgment is granted with respect to his ADEA and TCHRA claims arising out of his termination.

### 2. Termination – ADA

Lastly, Defendant moves for summary judgment on Plaintiff's alternative disability claim brought under the ADA, arguing that Plaintiff fails to put forth a *prima facie* case of disability discrimination. Doc. #46 at 21–23. Disability discrimination claims under the TCHRA apply the legal standards established under the ADA. *Gober v. Frankel Family Trust*, 537 Fed. App'x 518, 520 (5th Cir. 2013); *Herrera v. CTS Corp.*, 183 F. Supp. 2d 921, 925 (S.D. Tex. 2002). To prove a discrimination claim, a plaintiff must prove that: "(1) [he] had a disability; (2) [he] was qualified for the job; and (3) there was a causal connection between an adverse employment action and [his] disability." *Wolf v. Lowe's Cos., Inc.*, No. 4:16-CV-01560, 2018 WL 1322243, at *2 (S.D. Tex. Mar. 13, 2018).

Plaintiff cites his hypertension and cardiac episode during the initial PIP meeting as his disability. Doc. #1 ¶¶ 14, 19; Doc. #48 at 21–22. However, in an ADA case, "the relevant time for assessing the existence of a disability is the time of the adverse employment action." *Jennings v. Towers Watson*, 11 F.4th 335, 344 (5th Cir. 2021). Plaintiff testified that his disability claim is based on the cardiac event that took place on July 18, 2019, when he was initially presented with the PIP. Doc. #46, Ex. 1 at 91–92. Plaintiff testified and produced evidence documenting his release to work without restrictions on August 12, 2019. *Id.* at 45; Doc. #46, Ex. 31 at 2–4. Plaintiff was terminated on August 15, 2019, after his disability's limitation had concluded. Doc. #46, Ex. 1 at 57–64, Ex. 7 ¶ 7, Ex. 34 at 7–9. Therefore, Plaintiff was not disabled within the meaning of the ADA at the time of his termination. Accordingly, Plaintiff has failed to establish a *prime facie* case of disability discrimination based on his termination. Defendant's Motion for Summary Judgment is granted with respect to his ADA claim arising out of his termination.

## IV. Conclusion

Plaintiff's ADEA and TCHRA age discrimination claims fail as a matter of law due to being time-barred and Plaintiff's failure to put forth a *prima facie* discrimination case. Additionally, Plaintiff's alternative ADA disability discrimination claim fails as a matter of law because Plaintiff was not disabled during the time of the alleged adverse action. Accordingly, Defendant's Motion for Summary Judgment is hereby GRANTED in its entirety and this case is DIMISSED with prejudice.

It is so ORDERED.

3/30/23
Date

The Honorable Alfred H. Bennett
United States District Judge